## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                        ) | **Case No.:1:08-136-01 (CKK)** |
| ) | **Sentencing: October 7, 2008** |
| SABRINA VINES             ) | |
| ) | |
| Defendant.        ) | |
| _____ ) | |

### <u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>

COMES NOW, Defendant Sabrina Vines, by and through her attorneys Denise L. Bellamy, Esquire and Williams Worthy, LLP and respectfully submit the herein Memorandum in Aid of Sentencing for the above-captioned matter. Sentencing is scheduled for October 7, 2008.

### <u>INTRODUCTION</u>

On June 9, 2008, Defendant Sabrina Vines pleaded guilty to Theft of Public Money in violation of Title 18, United States Code, Section 641. She was released on her own personal recognizance and placed on pretrial supervision. The current offense level is 8 which includes a 2-point reduction for her acceptance of responsibility. The guidelines range for this offense is 0-6 months, Zone A. A Presentence Investigation Report was prepared on July 25, 2008 ("PSR"). Both the Defendant and the Government were ordered to submit a Memorandum in Aid of Sentencing by September 5, 2008. Ms. Vines hereby submits the herein Memorandum, outlining factors, pursuant to 18 U.S.C § 3553(a), that the Court should consider in imposing a sentence.

1

## FACTUAL BACKGROUND

At the time of the relevant conduct, Ms. Vines had been employed with the Federal Aviation Administration ("FAA"). During her employment, a government Master Card was issued to her for the sole and exclusive use of authorized government purchases. While Ms. Vines had use and possession of the credit card, she made personal purchases which were unauthorized and not reimbursed back to the Government. These unauthorized purchases amounted to approximately $8,925.56. Additionally, Ms. Vines used the credit card to purchase equipment from a third-party computer equipment vendor. The equipment was purchased for the FAA, however, Ms. Vines received kickbacks from the vendor in the amount to $14,653.62.[1]

## DISCUSSION

In the plea agreement, Ms. Vines and the Government agreed to an advisory sentencing calculation within the sentencing guidelines range of 0-6 months that included a two-point reduction for acceptance of responsibility. However, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence. See United States v. Dorcely, 454 F.3d 366, 374 (D.C. Cir. 2006). The sentence must be adequate "but not greater than necessary" to comply with the relevant purposes and factors set forth in the statute. 18 U.S.C. § 3553(a). The factors most relevant to this case are the seriousness of the offense, the nature and circumstances of the offense, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct, the need to protect the public, the history and characteristics of Ms. Vines and the need to provide just punishment. These factors set forth, and, outlined below, will demonstrate

---

[1] It has never been determined how much equipment the FAA actually received and Defendant makes no challenge regarding the amount of equipment received.

that sentencing Ms. Vines to any period of incarceration would serve no useful purpose as the Government's interest in appropriate sanctions and deterrence would be sufficiently met. Notwithstanding, however, the Court should also consider that the guidelines are *advisory* and that the Court is not bound by the parties' plea agreement or the Federal Sentencing Guidelines. Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B).

## I.    THIS COURT SHOULD CONSIDER THE 3553 FACTORS WHEN IMPOSING A SENTENCE

### 1.  Seriousness of the Offense - § 3553(a)(2)(A).

Ms. Vines recognizes that the conduct she engaged in is quite serious in nature. She does not dispute that she made unauthorized purchases with a government credit card and received kickbacks for other purchases. Her actions resulted in a gratuitous gain of $23,579.18. She fully understands that the FAA entrusted her with a credit card and she abused that trust. Ms. Vines, however, has fully accepted responsibility for the offense conduct and appreciates the consequences of exercising wrong judgment. In considering the seriousness of the offense, what becomes most debilitating for Ms. Vines is that the contemplated loss amount is $23,579.18, which by statute, required her offense level to be *increased* by two points. The personal purchases that were made amounted to $8,925.56 and, while this is by no means a nominal amount, Ms. Vines would like the Court to take notice that she agreed to forfeit her interest in certain property, namely a Samsung HDTV, that was purchased with government funds.

### 2.  Nature and Circumstances of the Offense - § 3553(a)(1)

The nature and circumstances of the offense, while simple and straight-forward, point in a mitigating direction. Simply put, Ms. Vines exercised poor judgment when she

made unauthorized purchase for personal gain. However, Ms. Vines' unauthorized use is limited to a handful of transactions all of which took place within a span of twelve months. Ms. Vines purchased electronics from Best Buy on approximately seven different occasions, paid for a rental car and made a purchase from a resort, all of which amounted to a loss of $8,925.56. There was no elaborate scheme or plot. She simply made purchases that she was not authorized to make.

Ms. Vines' actions are more analogous to bad judgment rather than criminal intent. While these facts do not excuse Ms. Vines' misconduct, it does bear directly on the issue of punishment and can be considered by this Court as mitigating factors.

### 3. Need to Promote Respect for the Law - § 3553(a)(2)(A)

We submit that Ms. Vines' conviction, her loss of her job and income, any possible restraint on her freedom that *any* sentence will impose, and the financial penalties that she may incur in restitution, fines, or any combination thereof, are sufficient to meet this requirement of this statute.

### 4. Need to Afford Adequate Deterrence to Criminal Conduct - § 3553(a)(2)(B)

Nothing in the record suggests that a sentence of imprisonment is necessary to deter Ms. Vines from committing a crime of this nature or any other crime. From the onset, Ms. Vines has been interviewed by agents of the United States Department of Transportation; had agents visit her home that she shares with her husband and children to confiscate items; her financial resources exhausted to retain defense counsel; the loss of her job; her ability to ever work in the federal sector. Ms. Vines has been on pretrial supervision for almost 3 months and now, before this Court, she faces up to 6 months for her misconduct. Although Ms. Vines has the much needed support of her family and

friends who respect and admire her, the mere embarrassment and humiliation of explaining to them the nature her wrongdoing is most significant. Ms. Vines also has a 19 year old daughter and a 16 year old son and everyday, Ms. Vines struggles to face the fact that one day, her children may learn of the exact details of the instant offense. She doesn't want her children to follow in her footsteps. At the age of 40, faced with her first and only criminal charge and conviction, Ms. Vines does not wish to revisit any of the occurrences that have taken place over the last 5 months. She will carry this conviction for the rest of her life. These facts alone surely constitute adequate deterrence to any future criminal conduct committed by Ms. Vines. Additionally, she is not at risk to recidivate.

### 5. Need to Protect the Public - §3553(a)(2)(c)

The information stated in the PSR suggests that Ms. Vines' conduct, within the context of her life, was a dramatic departure from the norm. Ms. Vines has no known juvenile or adult contacts with any state or federal criminal systems. (PSR at 7.) While Ms. Vines' gratuitous gain of government funds is inexcusable, there is no indication in the record that she specifically intended to defraud innocent people. There are no allegations that her conduct was directed to any individual. All indications are that any sentence of incarceration, including a sentence up to 6 months is unnecessary to protect the public.

### 6. History and Characteristics of the Defendant. §3553(a)(1)

Ms. Vines is 40 years old and has been married to her husband for about 6 years. As mentioned above, she has a 16 year old son and a 19 year old daughter, both of whom think the world of her. Ms. Vines owns her home which she purchased in1999, long

before the offense conduct. (PSR at 13.) The record shows she owns three vehicles and a 20-week timeshare in Florida. (PSR at 12, 13.)

Ms. Vines does not have a juvenile or adult criminal record nor does the record reflect that her family engaged in criminal conduct.

Ms. Vines would like this Court to take note that there is nothing in the record that reflects that her conduct commenced a life of luxury. Prior to the offense, Ms. Vines earned an annual income of $117,600.00 (PSR at 10, 11.) Her husband earns a net income of $4000.00 per month. (PSR at 11.) The PSR indicates that she now has about $130.00 in the bank and a retirement plan in the amount of $50,000.00 (PSR at 11.) Her household obligations are typical and not extraordinary; mortgage, car insurance, utility bills, etc. (PSR at 11.)

At the age of 40, Ms. Vines has no adult history of illicit drug use and tested negative on July 2, 2008 for illicit substances. (PSR at 10.)

Ms. Vines' employment record shows that she was steadily employed with the FAA from March 1990 until May 2008. (Id). She established a couple of home-based business in 2005 and 2007 which did not earn her any profits due to her discounted prices and lack of marketing skills. (Id.) She received her high school diploma in 1985 and attended Prince George's County Community College from 1996 through 1998, taking Business Administration courses. (Id.)

It is evident from the letters of support submitted herein on Ms. Vines' behalf, that she touched the lives of many around her. There are 17 letters attached to the herein Memorandum and that in itself speaks volumes. The writers of these letters want the Court what a wonderful influence Ms. Vines has been in their life. Despite this offense,

her family, friends, neighbors, co-workers and employers have not changed their opinion of her. The letters stress that she is a hard-working, honest, reliable, caring and compassionate. The letters from her children, Keirra and Ronald speak for themselves. (Exhibits 1 and 2.) Ronald's letter thanks his "mom" for him making the Honor Roll and achieving top cadet in the R.O.T.C. (Exhibit 2.) He says she never gave up on him. Keirra's letter indicates that her mother is a safe haven for many; a comfort zone; a confidant; a blessing; she is who she is because of her mother, her Superwoman. (Exhibit 1.) The final letter is from Ms. Vines herself. She acknowledges her wrongdoing and how this has hurt her family. (Exhibit 17.) She is ashamed and realizes how her stupidity has affected so many lives around her. She speaks of her mother who has Transverse Myelitis; she paralyzed from the breastbone down. Ms. Vines has been her caretaker since the onset of this disease and she asks this Court to consider that a sentence of incarceration means leaving her mother. Exhibit 18 documents her mother's illness.

**7. Need to Provide Just Punishment §3553(a)(2)(A)**

Ms. Vines has made efforts to make amends for her wrongdoing. As detailed in the PSR, Ms. Vines demonstrated an acceptance of responsibility. (PSR at 14.) Ms. Vines agreed to forfeit a Samsung HDTV that she has in her possession that was a fruit of the offense conduct.

Additionally, if the Court orders Ms. Vines to pay a fine, she asks the Court to consider several factors in deciding the amount of such fine. Pursuant to 18 U.S.C. § 3571(d), the maximum fine in this matter is $250,000.00. (PSR at 15.) On or about May 23, 2008, Ms. Vines resigned from her employment with the FAA. (PSR at 10.) To date, she is struggling to find another job and pay her bills. This was Ms. Vines' sole source of

income and her only means in earning a living. She is in the process of reapplying for Unemployment Compensation benefits as her first claim was denied. (Id.) She advised the probation officer that she is not sure of how her necessary monthly expenses will be met beginning in July of 2008. (PSR at 14.)

It is clear from the record, that Ms. Vines is no position to pay a fine of $250,000.00 or any amount for that matter. Although not in the record, Ms. Vines asks the Court to consider that undersigned counsel is a private attorney and not a public defender. As such, undersigned counsel was retained for a fee for this matter and as a result, Ms. Vines has incurred significant legal expenses.

In light of these facts, along with the recommendation made by the Probation Officer, Ms. Vines does not have the means to satisfy a fine and a just punishment should not include a fine or a sentence of incarceration. (PSR at 14.) Ms. Vines also asks this Court to go along with the recommendations of the PSR that restitution be ordered in the amount of $8,925.56. (Id.) Just punishment, when considering the herein facts and circumstances, would be amount to probation and restitution.

## II.    FEDERAL SENTENCING GUIDELINES ARE ADVISORY

Although the 3553(a) factors discussed above may argue for a sentence at the lowest end of the guideline range, the guidelines are merely advisory. See United States v. Booker, 2005 LEXIS 628 (Jan. 12, 2005).  "A district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." United States v. Foreman, 436 F.3d 638 n.1(6th Cir. 2006).

Furthermore, the Court is not bound by the plea agreement and can consider any guidelines adjustments, departures or calculations different from any stipulations in the agreement or contemplate a sentence outside the guidelines range based upon the general sentencing factors listed in Title 18, United States Code, Section 3553(a). The Court is also not bound by the non-mandatory Federal Sentencing Guidelines.

Given the application of <u>Foreman</u>, and the 3553(a) factors, Ms. Vines requests that the Court exercise its discretion when imposing a sentence.

**CONCLUSION**

For the foregoing reasons, Defendant Sabrina Vines respectfully requests that the Court exercise its discretion when imposing her sentence and that she be placed on probation in lieu of incarceration.

Respectfully Submitted,

**WILLIAMS WORTHY, LLC**

_/s/_____

Denise L. Bellamy #MD16993
5400 Kenilworth Avenue
Riverdale, MD  20737
(301) 887-9000
*Attorney for Defendant*
*Sabrina Vines*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of September 2008, a copy of

Defendant's Memorandum in Aid of Sentencing was electronically filed with notice and

copies to Thomas J. Hibarger, Assistant United States Attorney.

/s/_____

DENISE L. BELLAMY

To Whom It May Concern:

Although I have minimal knowledge of the situation at hand, I feel obliged to wirite a
letter speaking on behalf of the character of my mother, Mrs. Sabrina F. Vines. allow me
to start by saying my mother is a wonderful an blessed, God fearing individual who
understands that life does not come easy, mistakes will be made and lessons will be
learned. These are some of the values that she has instilled in my brother and I, as well as
many others that she has come in contact with.

Family is of the utmost importance to her, at times, more important than herself. She is a
wise and unselfish individual who hardly ever puts herself first.
She has taught me everything I know, congratulated my rights and corrected my wrongs.
She has made sure that I had everything I ever needed and most of all I've ever wanted,
and ensured that everything was of best quality! She has done so much for everyone and
accepts new ideas and people with wide open arms. She is a safe haven for many, a
comfort zone, a confidant and all else. My friends, my brothers friends, and their friend
are all welcomed when it comes to her and are instantly considered a child of hers. She
has such a strong ora about her and it is hard to dislike someone of her stature.

My mother is a blessing to everyone, and I cannot stress that enough. She is the glue that
holds our family together. She is the central contact point and care-taker for everyone.
She is amazing at what she does, caring for 2 children, 2 step children, a husband, her
parents, her siblings, and many others. She has assisted many in any way that she could
and has helped a lot of people get on their feet and move forward. She is a motivator, a
driving force, a teacher, and more. Sometimes I feel like she deserves a day off from life
so that she can sit back and enjoy the blessings returned to her in favor. She is, honestly,
all that I have, all that my brother has, and all that everyone else who depends on her has.
You could never know how much she means to us.

Currently, she is the 24-hour care-giver of my grandmother, who was suddenly struck
with an illness that requires her surveillance and attention at all times. These are not "sob
stories" that I lay at your feet, but truth. My grandmother no longer has the use of her legs
at the present time and cannot function without her care. My brother is a senior in high
school, and I, and junior in college. Although hard times are upon us, we are pulling
through it with the guidance of my wondeful mother. She is my Superwoman, our
Superwoman.

There is so much to say about this woman that it is rediculous! I am who I am, and
growing to be, because of her. She has always been my role model and I've always
wanted to be just like her. But she taught me to strive for better, to be better than she was
at my age. Instead of being Cheerleading Captain for 1 year, go for 2. And I did. Instead
of being an average student in school, aim for Honor Roll/Honor Society, and I did. At
the mere age of 19, I have done all that she has done plus more, I have been places, with
her at my side, that many may only dream of visiting and seen things that many may only
see as a painting on a wall or a television special. she has taught me the value of things,

**EXHIBIT 1**

what it really means to cherish and appreciate what we are handed. She has made possibilites realities for me and I truly thank her for that!

This is an emotional time for all of us. If you wish to contact me for more infromation, please do so. I've got a lot more and can go on and on for days on her behalf. Before I close, let me leave you with this to dwell on. "Do not judge a person by what they have done, judge them by their character." In truth, everyone makes mistakes, and they are meant to be made in oreder for one to grow and learn from them. Please consider all I have said and all that everyone else has said, in your sentencing. She id really and truly a good person, beautiful inside and out. Her spirit will speak to you even before she does and you will se. If ever there was a thought of maybe taking her from me, from us, it would be dead wrong! And the thought would surely have to be reconsidered. Life without her just isn't possible, as I am sure the feeling is mutual for you when it comes to at least one person in yor family. Thank you for your time.

THIS IS FOR YOU MOMMY! I LOVE YOU! :)

Sincerely,

Keairra A. Adams

## Denise L. Bellamy

| | |
|---|---|
| **From:** | "Sabrina Vines" <sabrina.vines@gmail.com> |
| **To:** | "Denise L. Bellamy" <dbellamy@williamsworthy.com> |
| **Sent:** | Wednesday, September 03, 2008 11:26 PM |
| **Subject:** | Fwd: Letter from my 16yr old son |

---------- Forwarded message ----------
From: **Ronald Adams II** <radams2k9@yahoo.com>
Date: Wed, Sep 3, 2008 at 10:48 PM
Subject: Letter
To: Sabrina Vines <sabrina.vines@gmail.com>


*Dear, To Whom May Concern*

*Well there's a lot to say about this lady. "My mom" She has always been there for me through everything in my life. Anything I needed, she was there for me. She taught me every little thing on how to make a better man in this world. Home training, how to treat a lady, how to be respectful for those that came before me; the list can go on and on. As I grew up I understood why she did certain things that I didn't understand when I was young. Things like be in before a certain time when I was out, always telling me do your best in everything you do and never less. And I have kept that mentality in my mind for years now and it has always got me where I needed to be. Getting Honor roll in school, becoming one of the top cadets in my R.O.T.C. program, being a leader and striving for anything I put my mind to. And I have all that to thank for is my mom. And now I see why she said those things as I grew up. She never gave up on me and stayed with me till the end of everything. She would never put anyone down or try to manipulate anybody. She is a caring person, not just to me but to everyone she encounters and loves. I love my mom and would put up a good fight for anyone who harms her or tries to take her from me because she is a great person and a well being to this world.*

*Sincerely,*
***Ronald Adams II***

--
Sabrina F. Vines

**EXHIBIT 2**

9/4/2008

## Denise L. Bellamy

**From:** <Colette.Lawson@hklaw.com>
**To:** <dbellamy@williamsworthy.com>
**Sent:** Tuesday, September 02, 2008 10:43 AM
**Subject:** Sabrina Vines - Character Reference Letter

Ms. Bellamy,
Hello, my name is Colette Lawson. Sabrina Vines is my first cousin, although, she has always been more like a sister to me.

Sabrina is hardworking, honest and reliable, she is also an exceptionally caring and compassionate person.
She is always willing to lend a helping hand and she does so with a infectiously positive attitude.
Sabrina is intelligent, creative and fun to be around, everyone loves Sabrina. I have known Sabrina for all of her life and I can say that don't believe she has ever made an enemy. She is simply one of the finest people that I know and I am blessed and honored to have her in my life.

# Holland + Knight

*Colette R. Lawson*
Records Supervisor
Holland & Knight LLP

200 South Orange Avenue
Orlando, Florida 32801

Main   407 425 8500
Direct 407 244 5117
Fax    407 244 5288
Email  colette.lawson@hklaw.com

**www.hklaw.com**

**NOTICE:** This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**EXHIBIT 3**

9/2/2008

September 2, 2008

### RE: Sabrina Fannie Vines

To Whom It May Concern:

It is my pleasure to write a character reference for Sabrina. I have known Sabrina all of my life; she and I are first cousins. Sabrina is a wife, a mother, a daughter and a friend. She is a nurturer, a caregiver, and provides a shoulder to lean on whenever needed.

Sabrina and I have many childhood memories and are often considered to be the anchor of the family. We keep in touch and try to keep one another informed on the latest happenings in the family. Sabrina is the type of person who will offer you her last; she exhibits an unselfish nature. We were there for each other when our children were born. I even remember about 15 years ago, when I had to have a surgical procedure and although it was in/out; I couldn't be on my feet. Who shows up at the door with food for me, but Sabrina? I was one of her bridesmaid in her wedding and she took the time to write each of us a personal note detailing the impact each of us has had on her life. As we age and mature, we stay in contact more now than ever before. Sabrina was one of the first people I contacted last June after the sudden death of my father; it was a bit devastating since we had just buried my maternal grandmother the week before. She was that comforting voice I needed to hear; when I saw her it was the same - - while I had been trying to be "the anchor" for my mother, my children and my siblings, I knew I could lean on Sabrina.

Even through this time in Sabrina's life, she is still that anchor, her mother has undergone a sudden illness and is recovering from paralysis, yet Sabrina has transitioned into her caregiver role. Her parents have moved in with her so her mother can receive the best care possible. While I can only imagine what she's going through, she's still managing to keep the family together; as she prepares for her son's senior year of high school and her daughters junior year of college; as well as being there for her stepchildren and her husband.

In closing, it is my opinion that Sabrina has been honest and has taken full responsibility for her actions; I trust that the outcome will work in her favor. If additional information is needed, I can be reached at 301-203-0350 or 202-693-3538.

*Janice C. Sheelor*

**EXHIBIT 4**

**NORMA L. DAYE**

3400 Cambridge Road                              Durham, North Carolina 27707

AUGUST 26, 2008

Attorney Denise Bellamy
5400 Kenilworth Avenue
Riverdale, MD 20737

Dear Attorney Bellamy:

I am writing this letter on behalf of Sabrina Vines. Although Sabrina is my niece, I do believe that I can forthrightly attest to her good character, without undue favor. I am familiar with Sabrina because I have known Sabrina intimately since her birth and have kept in close contact with her. As a child, teenager, and young adult, Sabrina spent an enormous amount of time in my home with my daughter and my daughter spent in equal amount of time in her home with her and her parents. Even today, they are closer than most sisters

Sabrina is a very intelligent, capable, dedicated, and personable young woman. She is always willing to help others in any way she can. She has done so much to help so many people and, in my opinion, gone far beyond the call of duty assisting in taking care of others. At the present time, she has responsibility for taking care of her mother who has no use of her lower body and is dependent on Sabrina for her total care.

Sabrina has two teenaged children who, in my opinion, are well grounded, honest and good kids reflecting good values and proper parental guidance. Her daughter is a junior at Morgan State University pursuing the goal of attending medical school. Her son is a senior in high school, and is planning to attend college next fall. She is very involved in her children's community and school activities. She has raised them well and instilled in them the discipline to set high goals and to work toward their achievement.

I do not know the exact details of the matter which Sabrina is currently undergoing. But if it has brought the attention of the criminal justice system, I can affirm that it is not something that is characteristic of Sabrina's conduct. She has always been upstanding and honest in all of her dealings. Any conduct that draws attention of the criminal justice system, that conduct is completely unusual and a true aberration that does not reflect her values, her character, her upbringing, her outlook or her deep seated honesty.

There is no doubt in my mind that Sabrina has learned a hard lesson that will be instructive and will be a guiding force in her conduct in every manner of dealing in the future. She will be an upstanding citizen who will never repeat the conduct that has her before the criminal justice system.

Please accept these remarks as expressing a heartfelt, deep, and earnest belief that Sabrina is a person of good character and strong values.

Thank you for this opportunity to submit this statement.

Yours sincerely and genuinely,

*Norma L. Daye*

Norma L. Daye

**EXHIBIT 5**



RECEIVED
AUG 2 8 2008
By

To Judge Collen  Collar-Kotelly:

I am sending this letter to give some insight on the characteristics of Sabrina Vines. However, in trying to keep it short, it is pretty hard to know where to start because she has so many redeeming qualities.

Let me start by what I know is a priority for her which is family.  She is an exceptionally loving and responsible wife, mother, sister, daughter, aunt and friend.  She is the type of person, there for you when you are in need without having to ask twice.  Previously I was injured and she stood by me, making sure I made appointment while not being able to drive myself.  Even to the point of changing my dressings which even made me squeamish. When her mother took ill, she moved her parents into her home to ensure proper care.

I can go on and on but in keeping it short, to know Sabrina Vines is to love her.

**EXHIBIT 6**

To Whom It May Concern:

I have known Sabrina Vines for sometime and she has the ability to develop ideas and plan great activities within a short space of time. She is very good at managing her time and getting the work at hand done quickly. Sabrina is an active listener and exceptional at explaining herself to others. Motivation drives her to help others without hesitating. Mrs Vines is very dependable, hardworking, honest, loyal and very good at making sound decision. She has a great personality that would make anyone want to be in her company.


Sincerely



Cheryl Carroll

**EXHIBIT 7**

August 25, 2008

Dear Denise Bellamy,

I am writing this letter on behalf of Sabrina Vines. I have known Sabrina since high school (1983). In school, Sabrina was very talented and a beautiful individual inside and out. She was involved in all types of school activities and held a high academic. Sabrina is a person that you can talk confidentially to about your problems and she would have a positive response for you. In all the years that I have known Sabrina, she never seemed to have a bad day, if so, you wouldn't have known it. Because she's a positive individual that goes out her of way for family, coworkers, and friends from her heart.

In addition, I worked with Sabrina at the Federal Aviation Administration she had an excellent reputation in the building. Always helpful, nice, friendly, ambitious, and professional. At a young age, Sabrina reached a good career ladder, because of her positive attitude, kindest, hard work, and being the classy lady that she is. Sabrina is beautiful on the outside, but she never carried herself to be better than anyone.

Sabrina is an excellent wife, mother, daughter, sister, aunt, and human being. I had a chance to meet her kids and they're beautiful and wonderful just like their mom. When I attended Largo High School football games, Sabrina was their representing her daughter who cheered for Largo. God was first and her family was second for Sabrina.

Terry Cortee
240-463-9213

**EXHIBIT 8**

Ginger W. Jones
10903 Sebago Court
Upper Marlboro, MD 20774
301 808-5058
gwjones528@yahoo.com

September 2, 2008

To Whom it may Concern

Dear Sir or Madam,

I am writing this letter as a personal reference for Mrs. Sabrina Vines.

As a neighbor, I have know Mrs. Vines for over 5 years and have found her to be helpful, caring, considerate, trustworthy, reliable, hard working, family oriented and much more.

I am a Multiple Sclerosis patient and Mrs. Vines has demonstrated helpfulness, caring, and consideration whenever I have been in need. As an example, earlier this year I was taken by ambulance to the hospital. Mrs. Vines saw the ambulance outside and immediately came into my home and assisted me and the paramedics.

I have a 17 year old daughter whom I have trusted in Mrs. Vines' care. Mrs. Vines has taken her shopping on several occasions and has also provided transportation to school whenever I have been unable to do so.

One example of Mrs. Vines being reliable and hard working would be last May, my basement flooded. My husband was out of town, I called Sabrina, and she came to my home with a portable sump pump and wet/vac and began to clear the water out.

Mrs. Vines has truly been a blessing to me and my family.

I trust that the information provided will be of assistance and I will be happy to provide further information, if required.

Yours Sincerely,

Ginger W. Jones

**EXHIBIT 9**

To whom this may concern

I have known Sabrina Vines for 7years.  During the time I have known Ms. Vines, I have found
her to be a wonderful person.  She is not just a family friend, but she is like mother to me.  She is
a very thoughtful and generous person.  She has such great humor and she never meets a
stranger.  She is always involved in activities that have the best interest of others at heart and she
volunteers in many community and school activities, such as cheerleading, band, and basketball.
I enjoy being around her because she has a great sense of humor and a quiet, strong spirit that is
contagious to others.  Ms. Vines is a great person and I am very blessed to have her in my life.


Robert Pettis

202-498-9971

**EXHIBIT 10**

September 3, 2008

TO: Denise Bellamy,

I have been knowing Sabrina Vines for about (10) years and we are more like family than friends. I spend time at her house with her and her family this include her mother and father.

Just from my experience with Sabrina, she is the kind of person that will give you the clothes off her back if you need it. She is well-intentioned and she is always there if you need her.

When I lost my job, Sabrina would call every couple of days to check on me and to see if I needed something. She would always call and say open your front door and there she would be standing with arms full of groceries, phone card or a couple of dollars to go on job interviews.

Sabrina is like my little sister, we talk about everything always calling even now to check to make sure I am okay and if I need anything.

When my mother passed, she was there at the hospital to help me make arrangements and pick me up when I was so lost and did not know what to due or how to do it. She was and still is a big help, even if it is just to have her shoulder to cry on.

There are times that you cannot count on family members but I can always count on Sabrina in time of need.

Thank you.

June Harrison

**EXHIBIT 11**

**Denise L. Bellamy**

| | |
|---|---|
| **From:** | "Sabrina Vines" <sabrina.vines@gmail.com> |
| **To:** | "Denise L. Bellamy" <dbellamy@williamsworthy.com> |
| **Sent:** | Thursday, September 04, 2008 4:07 PM |
| **Subject:** | Fwd: the characterization of Sabrina Vines |

---------- Forwarded message ----------
From: **Brittainy Bell-Shorter** <b.bellshorter@gmail.com>
Date: Thu, Sep 4, 2008 at 2:34 PM
Subject: Fwd: the characterization of Sabrina Vines
To: sabrina.vines@gmail.com

PHENOMONAL WOMAN.  These are the best two words that describe Sabrina Vines.  I have had the wonderful opportunity to be welcomed into her home and treated as one of her own.  in todays time, there is a struggle for power every where you go.  i have personally come across a lot of adults that feel like they have to make it known that THEY are the adults and that the YOUTH are just that.  I have never had to worry about that with Mrs. Vines.  i can talk to her about anything and never have to worry about feeling less than what i am.  she has a peace about her that makes you feel like everything is going to be ok.  i dont care how upset i am, who messed up my day, or if the world is crashing down on me, she sees the good in every situation and makes you see it too.  Since i have been a part of this family, i have only seen a smile on her face.  never have i ever seen her frown, or sensed any type of negativity coming from her.  she is the epitome of a strong black woman because she never lets a situation get her down.  Maya Angelou says "when a person shows you who you are, believe them."  Saying that, Mrs. Vines has shown every creature made in His image that she is a beautiful, intelligent, hardworking, strong, honest, trustworthy, sweet God fearing woman, mother, wife, daughter, and we need more people like her in the world.  it would be such a better place.  I have a mother of my own that i love, call mommy and is phenomonal herself, but i love Sabrina Vines as if she was my mommy too.

--
Sabrina F. Vines

**EXHIBIT 12**

August 25, 2008

Denise Bellamy
Judge Colleen Kollar-Kotelly

I have known Sabrina for the last 7-8 years; our friendship was a direct result and extension of the friendship between our daughters. During our friendship we have worked closely together to ensure that our children were successful in all of their endeavors. We have shared good and bad times with our entire families and always provided each other with the strong support to get through each situation. We became extended families. I refer affectionately to her as my "little big" sister.

She was one of the cheerleader coaches during my daughter's high school years, she was held in high regard by the cheerleaders, parents and administration of the school. This was a position where you had to gain the trust and respect of everyone involved in the program; I trusted her judgment and leadership skills and admired the rapport that she had with all of us.

One of the things that I have admired about her was her ability to conduct herself in difficult situations. I strongly believe that Sabrina is an asset to anyone who will or have had the opportunity to know her. Sabrina is a very caring and compassionate person who will always be there to assist you. She embodies the concept that we all can make mistakes; however, it is what we do after a mistake has been made that will define who we really are.

I have come to value and cherish our relationship. I would support her wholeheartedly with confidence. Please feel free to contact me at 202-493-4903 if you require additional information.

Thank you for your time and attention.

Sharon Hunt

**EXHIBIT 13**

August 26, 2008

Dear Judge Colleen Kollar-Kotelly:

I, Tonya Trice, am writing this letter on behalf of Sabrina Vines. I have known Sabrina for the past six or seven years in a professional capacity working at the Federal Aviation Administration. Through working together in the same organization from October 2006 to May of 2008, Sabrina and I developed a personal friendship outside of our professional relationship. Sabrina is a devoted mother, wife, daughter, sister and FRIEND. Sabrina's character is of a dignified, trustworthy and very caring person, always putting others happiness in front of her own.

With all that Sabrina has gone through in her life and continues to go through, she has always maintained a level of strength and positive attitude. Being that Sabrina did in fact break the law and made a bad judgment call; I feel that she should not serve time because she is not the same person she was back then. I am not just saying this because I consider her a friend but because of the person she is and all those including myself that depend on her from her two children, one in college and one in high school, to her loving husband, to her mother who is ill and recently moved in with her because Sabrina would not allow anyone else to take care of her, to her aging father that also resides with her, to her being the youngest sibling of four but more like the mother hen who holds the family together. Taking away Sabrina's freedom now, at this point in her life…I do not believe anything positive would come of this. Sabrina is fully aware of the error of ways and thus has taken full responsibility and accountability for her wrong doings.

What set Sabrina aside from others that I know was from day one she was honest about the situation and charges against her and she clearly stated that she made a bad judgment call. I appreciate that fact that she pulled me aside to tell what she had done before I had heard it from others who may have added their own version to what actually happened. At no time did she blame anyone other than herself and that is why I have a profound respect for the person she has become.

I am asking the court to not take Sabrina's freedom away based on a mistake she made many years ago but please consider probation. She willingly cooperated with officials throughout this ordeal; please see fit to give her a second chance.

Sincerely,

Tonya Trice

Tonya Trice
11402 Accolade Terrace
Clinton, Maryland  20735
301-802-0053

EXHIBIT 14

August 28, 2008

The Honorable Judge Colleen Kollar-Kotelly:

My name is Donnica Crossland and I am writing this letter on behalf of Sabrina Vines. I have worked with Sabrina over the past four years at the Federal Aviation Administration.

I have known Sabrina to be a devoted mother, wife, daughter, sister and friend. This year Sabrina's mother became very ill and she had to take time off to care for her mother in the midst of everything else going on in her life, which is the character of a caring person. Sabrina is very proud of her family and has endeavored to be a major caretaker in the home for her mother, father and two children. Sabrina is the youngest of four siblings but carries the responsibility of the one who wholes the family together.

After all that Sabrina has gone through and continues to go through she continues to maintain a strong and positive attitude. Sabrina has cooperated with officials throughout this ordeal and has never once tried to place the blame on anyone else and has taken full responsibility for her actions and I think that speaks for itself.

I am asking that you please do not take Sabrina from her family at this time she has so many that depend on her. Please allow her a second chance.

Sincerely,

Donnica Crossland
316 35th St NE
Washington, DC 20019
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

**EXHIBIT 15**

August 27, 2008

Honorable Judge Colleen Kollar-Kotelly

Dear Judge Kollar-Kotelly,

LETTER OF REFERENCE

I am writing this letter on behalf of my former employee, Sabrina Vines. I first met Sabrina in 2006 when I interviewed her for a job in my fledgling organization. I had been made aware by her then supervisor of an investigation in progress, of how she had been demonstrating poor work habits, not showing up for work, using excessive amounts of leave, of being able to provide only limited work assignments due to the ongoing investigation. Although not explicitly stated, she was basically presented to me as "damaged goods". We met at her office, and within the first five minutes of the interview she asked if she could close the door and speak privately. I agreed, and she began to tell me openly about past actions on her part, about the fact that she was under investigation by the Office of the Inspector General for unauthorized use of the Government purchase card. She acknowledged that what she had done was wrong, and she understood that at some point she would have to face the consequences of her actions. She was very frank and indicated she would understand if I didn't want to take a chance with her as an employee in a startup organization.

After pausing momentarily, I told Sabrina that we all make bad choices in our lives; that the choices in the past don't have to determine our future, and I asked if she was still willing to take the job. She agreed and she has worked for me from that time until her resignation on May 23, 2008. Since that time, Sabrina has performed her duties with diligence, professionalism, and with integrity.

What impressed me a bout her was her openness to "confess" little mistakes. You know, the kind of mistakes we make around the office and try to fix before someone else finds out. Errors like omitting the important person on the email message, apologizing for a late return from lunch (five minutes), dropping an assignment but acknowledging the oversight without excuse. Those behaviors that speak more deeply to the true character of a person. These behaviors are becoming more difficult to find in our society these days.

Sabrina's character added greatly to our team. She made sure every member of our team was aware of her situation. She is an eager learner, willing to step up and accept new challenges. One word sticks out in my mind when I think of Sabrina's time with our group: Trustworthy.

I am not trying to minimize the severity of her actions nor the potential damage to the Public Trust caused by her choices. Comparing her actions to others holding government positions in this city rife with scandal and corruption would still not justify her willful actions. What sets her apart is how she dealt with the situation when confronted with the findings. She was cooperative with investigators and willingly participated in interview after interview. She freely acknowledged her culpability in the matter and made no excuse except for poor judgment on her part.. This speaks of conscience and a strong sense of what is right.

In deciding on an appropriate penalty in Sabrina's case, I would respectfully ask that you consider these qualities that Sabrina possesses and has displayed consistently for the time I have known her. Also, please consider how much her family needs her. Not just her immediate family, but her extended family as well. Although the youngest sibling, Sabrina's role among family and friends is one of confidant, part- time matriarch, and spiritual guide. Depriving her family of these benefits would be detrimental. To incarcerate Sabrina at this point would be fruitless since the mental and emotional punishment she has both endured from others and has inflicted upon herself during this process should more than suffice. An alternative such as requiring restitution, possibly combined with supervised probation may provide an acceptable balance between Justice and Mercy.

**EXHIBIT 16**

August 28, 2008

– 2 –

Malcolm S. Forbes said, *"It is all one to me if a man comes from Sing Sing Prison or Harvard. We hire a man, not his history."* Sabrina has proven this saying true during the time she worked for me. The poor choices an individual makes do not have to define who they are unless they choose to embrace those choices as their identity. In determining guilt, the court must rely on the facts presented to the judge and jury. In determining appropriate penalty, I hope you will consider not only the facts presented to you on paper, but also on the witness of those who truly know and understand Sabrina's character. Sabrina has chosen a different path. Your upcoming decision can either allow her to continue on that positive path or at the most, delay her on that journey.

Thank you for your time.

Sincerely,

Nelson A. Hines

Cc: Denise Bellamy

September 3, 2008

Sabrina F. Vines
903 Falcon Drive
Upper Marlboro, MD 20774
301-324-9309

Honorable Judge Colleen Kollar-Kotelly
United States District Court
Washington, DC 20001

Dear Judge Kollar-Kotelly,

I am Sabrina F. Vines and I have had several friends and family to write a character letter on my behalf. I knew the time would come when I would have the chance to write or speak on my own behalf and I would be lost for words. I will attempt to do so in the following letter.

Let me start by saying first. It is pretty hard to tell you what type of person I am or how I see myself because I never put me first. So I guess will write this letter to ask for you to forgive me and allow me another chance in society as well as tell you how hurt I am that I have done something of this magnitude that caused such a deepen hurt and sadness for myself, some friends and some family members.

Let me begin by acknowledging I have done wrong and I am very, very sorry and remorseful of that fact. I am acknowledging the mistakes of mine and accepting the fact I did not make good decisions at a point in my life. I have asked forgiveness from God and my family. Also acknowledging that I have done something that has hurt my family tremendously and I must get through for my family. I am so ashamed that I had to make some of them a part of this to get through it. I have realized how my stupidity has affected so many lives and people in my life and not just my own.

At one point, I had wished to bring my children to court when I was to be sentenced to show them how they will always need to be mindful of their decisions and be held accountable for them right or wrong. (As if it would teach them a lesson.) I had a second thought and I thought it would be more devistating for them to see me go through this in a courtroom. I decided not to have them be a part of that day but to explain as much as possible as I usually do.

I have also thought over and over in my mind how could I have let something like this happen. I was most devastated and heartbroken when I realized, I could not vote until this whole case was over. That was when I really sat down and tried to evaluate the entire situation I had gotten myself into. I wish I had an answer. I really cannot recall my total state of mind during that time; it has been over 5 years ago when this all happened. That may seem bad but I have prayed about moving on and not dwelling on the mistakes, but to not make them again, be mindful and conscious of my decisions. Through this I have

**EXHIBIT 17**

truly grown as a person and reached into myself to find out what am I really about? I think I am good with the answer. I used to feel no matter what, I did not have to be first in life. Now I know and understand the instruction the flight attendants give when flying oh so well, when they tell you "in the event of an emergency, first put your oxygen mask on before you can help others". You must be in line and safe before you can offer your help or be any good to others. Hypothetically speaking, I believe all too many times, I have put on everyone's mask before my own. I have now learned I must take care of me and keep my life in order so that I can be of assistance to others in every way of life. Please know this is in no way to pass any blame to anyone its just helps me to keep my life in perspective.

Through these times of investigation and court, my nerves have been terrible. I cannot help but think if I had to leave my mom. I am the caregiver for her since March 08. She has been diagnosed with a condition called Transverse Myelitis, which has her paralyzed from the breastbone down. She is a North Carolina resident but resides with me at this time since this illness has taken place. I am asking if you will consider this in sentencing please. I have continued to keep my head up and my spirits up so my family can still count on me. I guess I have done as well as to be expected. I want you to know I am one person you will never have to see in your courtroom again. I have truly learned a lesson if there was one to be learned.

Sincerely,

Sabrina F. Vines

**KERNAN ORTHOPAEDICS AND REHABILITATION**
UNIVERSITY OF MARYLAND MEDICINE

2200 Kernan Drive
Baltimore, MD 21207
Phone: 410.448.2500

May 8, 2008

RE: DAVIS, SHIRLEY T MRN: ▓▓▓▓ DOB: ▓▓▓▓▓

To whom it may concern:

I have been following Ms. Davis since April 2008 for her rehabilitation needs resulting from paraplegia secondary to transverse myelitis that first appeared in March 2008.

Ms. Davis is currently undergoing inpatient spinal cord injury rehabilitation at Kernan Hospital. She currently has severe weakness in her legs that limits her ability to use them for functional tasks or mobility. She also has impaired bowel and bladder function (neurogenic) that requires manual management with disimpaction and catheterization.

While we hope that her function will improve with continued rehabilitation to the point where we expect she will be more independent using a manual wheelchair, given the severity of her spinal cord injury she is currently unable to take care of herself and will likely require a significant amount of care for the foreseeable future. Her daughter has been providing the majority of this care and needs to be available to take her to outpatient therapy and medical appointments after she is discharged on May 20, 2008.

I expect that she will continue outpatient therapy for at least an additional 12 months but this is subject to change based on her degree of improvement. I plan to continue evaluating Ms. Davis in my clinic and I will adjust my projections based on these visits and updates from her therapy team.

Please feel free to contact me for further questions or more information regarding this patient and her care.

Sincerely,

*Henry S. York MD*

Henry S. York M.D.
Attending Physician, Spinal Cord Injury Service, Kernan Hospital
Assistant Professor of Neurology, University of Maryland School of Medicine
Diplomate, American Board of Physical Medicine & Rehabilitation
Fellow, American Academy of Physical Medicine & Rehabilitation
Phone: 410-448-6261, Fax: 410-448-6617

**EXHIBIT 18**

